IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| JOHN SCOTT ROSE, et al. | § | |
| --- | --- | --- |
| Plaintiffs | § | |
| vs. | § | CASE NO. 6:11cv263 |
| UPSHUR COUNTY, TEXAS, et al. | § | |
| Defendants | § | |

## MEMORANDUM ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This case involves two separate claims. First, Plaintiff John Rose alleges that his employment was terminated and his house was searched in retaliation for his opposition to sexual harassment in the workplace. For that, Plaintiff John Rose seeks relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq*. Second, Plaintiffs John Rose, his wife, Crystal Rose, and their four minor children claim that the search of their home by Upshur County Deputies Terry Carter and Landon Burleson was unreasonable and a violation of their Fourth Amendment rights. For that, Plaintiffs seek relief under 42 U.S.C. § 1983. Defendants moved to dismiss John Rose's Title VII retaliation claim (Doc. No. 23) and moved for summary judgment on the Fourth Amendment § 1983 claim (Doc. No 32). Having considered Defendants' motions, the arguments of counsel, and the applicable law, Defendants' motion to dismiss (Doc. No. 23) and motion for summary judgment (Doc. No. 32) are GRANTED.

### I. Factual Background

Plaintiffs filed their original complaint in May 2011. Defendants answered and moved for

judgment on the pleadings. The Court granted Plaintiffs' motion for leave to amend their complaint and Defendants moved for partial dismissal of the amended complaint. The record in this case sets forth the following facts.

In December 2009, Plaintiff John Rose was employed as a jailer with the Upshur County Sheriff's Department. That month, Rose learned that two sheriff's department employees had "made inappropriate sexual comments and/or suggestive communications with his wife." The amended complaint provides some indication that the comments were made on the internet or through e-mail. But nothing in the pleadings provides further details about these comments and communications or their content.

Rose complained to the chief deputy about the employees' comments and communications. On February 2, 2010, Rose's wife, Crystal Rose, e-mailed Upshur County Sheriff's Department Captain Gary Roberts to complain that a sheriff's department employee was spreading rumors and statements about her and her husband.

The next day, Rose called in sick for work. Later that day, Captain Roberts called Rose at his home to discuss the complaints he and his wife had made. Captain Roberts was unable to reach Rose by telephone, so he sent Deputy Carter to see if Plaintiff was at home. Carter arrived at the Roses' home around 8:30 p.m. He observed a car in the driveway with "dealer" license plates, which prevented Carter from verifying who owned the car. He knocked on the front door for several minutes, but received no response. Carter left the home, but returned a few minutes before 9:00 p.m.

When he arrived the second time, Carter walked to the front of the home and observed that the front door was open. Through the open door he saw that the television and many of the lights in the home were on. He also noticed that the interior of the home appeared to have been ransacked and

as though someone had been rummaging through it. Carter yelled into the house several times to announce his presence, but he received no response. At this point, he called for back up.

Deputy Burleson arrived at the Roses' home a few minutes after 9:00 p.m. The two deputies entered the home, yelled for John Rose, and searched inside for approximately four-and-a-half minutes. They did not find anyone inside. As the deputies were exiting the home, Plaintiff Rose and his family arrived. The next day, Sheriff Anthony Betterton terminated Rose's employment with the Upshur County Sheriff's Department.

## II. Motion to Dismiss Plaintiff John Rose's Title VII Retaliation Claim

### a. Legal Standard

Defendants filed a motion to dismiss John Rose's claim for unlawful retaliation. Motions to dismiss for failure to state a claim are "viewed with disfavor, and are rarely granted." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (internal quotation omitted). The Court utilizes a "two-pronged approach" in considering a motion to dismiss. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). First, the Court identifies and excludes legal conclusions that "are not entitled to the assumption of truth." *Id.* Second, the Court considers the remaining "well-pleaded factual allegations." *Id.* The Court must accept as true all facts alleged in Plaintiffs' complaint, and the Court views the facts in the light most favorable to Plaintiffs. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Plaintiffs' complaint survives Defendants' 12(b)(6) motion to dismiss if it includes facts sufficient "to raise a right to relief above the speculative level." *Id.* (quotations and citations omitted). In other words, the Court must consider whether Plaintiffs have pleaded "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### b. Timeliness of Motion to Dismiss

Plaintiff John Rose[1] argues that Defendants' motion to dismiss is not timely filed because it was not filed before Defendants' original answer. Plaintiff's argument lacks merit. In response to Plaintiff's complaint, Defendants filed a motion for judgment on the pleadings. Plaintiff then moved for leave to file an amended complaint. The Court granted leave and at the same time denied Defendants' motion for judgment on the pleadings without prejudice. In response to Plaintiff's amended complaint, Defendants filed an answer and a motion to dismiss. Defendants are correct that the motion for judgment on the pleadings was denied because Plaintiff had amended his complaint. Defendants were entitled to file a responsive pleading to Plaintiff's amended complaint.

### c. Title VII Retaliation

The Court granted Plaintiffs leave to amend their original complaint. In response, Defendants have moved to dismiss Plaintiff John Rose's amended complaint for Title VII retaliation. Plaintiff Rose did not move for additional leave to amend his complaint.

Plaintiff Rose claims that he was retaliated against because of his opposition to sexual harassment in the workplace and participation in protected activity. "Title VII prohibits retaliation . . . against individuals who oppose discriminatory employment practices or participate in complaints or investigations of employment practices prohibited by [T]itle VII." *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 249 (5th Cir. 1997) (citing 42 U.S.C. § 2000e–3(a)).

To establish a prima facie case of retaliation, a plaintiff must show that: (1) he participated in an activity protected by Title VII; (2) his employer took adverse employment action against him; and (3) a causal connection exists between the protected activity and the materially adverse action.

---

[1] Because only John Rose asserts a Title VII claim, references in this Order to Plaintiff refer to John Rose only. References to Plaintiffs refer to John Rose, his wife, and their children.

*See Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008).

To satisfy the first element of the prima facie case, an employee must show that he has either (1) "opposed any practice made an unlawful employment practice" by Title VII (the opposition clause); or (2) "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII (the participation clause). 42 U.S.C. § 2000e-3(a). Plaintiff's complaint does not allege sufficient facts to support a cause of action under either theory.

### i. The Opposition Clause

A plaintiff satisfies the opposition clause if he "opposed any practice made an unlawful employment practice" under Title VII. 42 U.S.C. § 2000e-3(a). If a plaintiff opposes an employment practice that is not actually prohibited by Title VII, the plaintiff may still be able to satisfy the opposition clause if he demonstrates that he had at least a good faith, reasonable belief that the practices he opposed were unlawful. *See Wilson v. UT Health Ctr.*, 973 F.2d 1263, 1267 (5th Cir. 1992); *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1140 (5th Cir. 1981).

In this case, Plaintiff claims that he was terminated from his employment at the Upshur County Sheriff's Office because he opposed sexual harassment. The alleged sexual harassment occurred when two sheriff's department employees "made inappropriate sexual comments and/or suggestive communications with [Rose's] wife." Doc. No. 19 at 3.[2] Plaintiff claims that these comments and communications constituted sexual harassment against him, and that his employment was terminated because he complained about this sexual harassment.

---

[2] The complaint also alleges that an employee "spread rumors and/or statements in the workplace" about Plaintiff and Plaintiff's wife. But according to the allegations in the complaint, it was Plaintiff's wife, not Plaintiff, who complained about these alleged rumors and statements. Moreover, there is no allegation that these rumors or statements were sexual in nature. To the extent these were alleged to be different comments than the communications already mentioned, the Court will not consider them.

In their motion to dismiss, Defendants argue that Rose fails to allege that he engaged in protected activity because Rose has not alleged the existence of an unlawful employment practice.

Assuming the allegations in the complaint to be true, and drawing all reasonable inferences in the light most favorable to Plaintiff, the Court finds that Plaintiff's allegations do not support a claim for retaliation under the opposition clause because Plaintiff has not alleged that he opposed an unlawful employment practice. Plaintiff alleges that two Upshur County employees made inappropriate sexual comments or suggestive communications with Plaintiff's wife and that he complained to the chief deputy about the comments and communications. Plaintiff has not pleaded facts that show that he or another employee were subjected to unwelcome sexual harassment. *See Earle v. Aramark Corp.*, 247 F. App'x 519, 524-25 (5th Cir. 2007) (stating that a prima facie case of sexual harassment requires a plaintiff to show "[he] was subjected to unwelcome sexual harassment"). The facts alleged hint that Rose's wife was subjected to unwelcome sexual communications. But this is not an unlawful employment practice under Title VII. Moreover, the allegations of harassment are vague. Except to say that the comments directed at his wife were "inappropriate," "sexual," and "suggestive," Plaintiff's amended complaint leaves the Court guessing about important details such as the content of the comments and communications. These allegations are insufficient to support Plaintiff's claim that he was retaliated against for opposing an unlawful employment practice.

Alternatively, Plaintiff argues that he satisfied the opposition clause because he had a good faith, reasonable belief that the employment practices he opposed were unlawful. Plaintiff supports this argument by simply stating that he "had a reasonable and good faith belief the practices were unlawful." Doc. No. 28 at 6. This statement is conclusory. Plaintiff does not articulate the reason

underlying his good faith belief. Accordingly, Plaintiff has not pleaded enough facts for this Court to determine that his claim of a good faith belief is plausible on its face. *See Twombly*, 550 U.S. at 570.

### ii. The Participation Clause

The remaining avenue for Plaintiff's retaliation claim is the participation clause. Plaintiff's complaint alleges that he was retaliated against for participating in protected activity. Defendants contend that Plaintiff has not properly pleaded a cause of action under the participation clause for two reasons. First, Defendants argue that Plaintiff has merely recited an element of a cause of action and supported it with a conclusory statement. Second, Defendants argue that Plaintiff has not alleged that he participated in any activity that is relevant to a claim under the participation clause. Specifically, Defendants argue that Plaintiff cannot rely on his Equal Employment Opportunity Commission (EEOC) charge to satisfy the participation clause because he filed that charge after he was terminated from the Upshur County Sheriff's Department. Because he was not employed by Defendants at the time he filed his EEOC charge, the charge does not satisfy the participation clause. *See e.g., Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 428 (5th Cir. 2000) ("In the instant case, the 'participation clause' is irrelevant because [plaintiff] did not file a charge with the EEOC until *after* the alleged retaliatory discharge took place.").

The Court agrees with Defendants that Plaintiff has not properly pleaded a cause of action under the participation clause. Plaintiff's claim under the participation clause is based entirely on an unsubstantiated conclusion that he was retaliated against because he participated in protected activity. There are no facts indicating that he made a relevant EEOC charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII. Accordingly,

Plaintiff's complaint does not contain enough facts to state a claim to relief under the participation clause that is plausible on its face. *See Twombly*, 550 U.S. at 570.

For the foregoing reasons, Defendants' motion to dismiss Plaintiff John Rose's claim for retaliation (Doc. No. 23) is GRANTED.

### III. Motion for Summary Judgment of Plaintiffs' Fourth Amendment Claim

#### a. Legal Standard

Defendants move for summary judgment on the Fourth Amendment § 1983 claim brought by John Rose, Crystal Rose, and their four minor children. The Court should grant a motion for summary judgment if no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 411 (5th Cir. 2008). A fact is material if it might affect the outcome of the suit under the governing law. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009). Issues of material fact are "genuine" only if they require resolution by a trier of fact and if the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Sossamon*, 560 F.3d at 326. When ruling on a motion for summary judgment, the Court must view all inferences drawn from the factual record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Sossamon*, 560 F.3d at 326.

Under Rule 56, the party moving for summary judgment must "demonstrate the absence of a genuine issue of material fact." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010) (internal quotation omitted). If the moving party fails to meet this initial burden, the motion must be denied

regardless of the nonmovant's response. *Id.* (internal quotation omitted). If the movant meets the burden, however, Rule 56 requires the opposing party to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *Anderson*, 477 U.S. at 256; *U.S. ex rel. Farmer v. City of Hous.*, 523 F.3d 333, 337 (5th Cir. 2008); *EEOC v. Tex. Instruments, Inc.*, 100 F.3d 1173, 1180 (5th Cir. 1996). The nonmovant's burden may not be satisfied by argument, conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a mere scintilla of evidence. *Matsushita*, 475 U.S. at 586–87; *U.S. ex rel. Farmer*, 523 F.3d at 337; *Duffie*, 600 F.3d at 371.

### b. Discussion

The material facts related to Defendant deputies Carter and Deputy Burleson's search of the Roses' home are not in dispute.[3] Plaintiffs contend that Defendants violated their Fourth Amendment right to be free of unreasonable searches when Defendants entered their home without a warrant. Defendants argue that they are entitled to qualified immunity on the Fourth Amendment claim. Under the facts of this case, the Court finds that Deputies Carter and Burleson are entitled to qualified immunity because it was not clearly established that entering the Roses' home under the circumstances was objectively unreasonable and therefore a Fourth Amendment violation.

"The doctrine of qualified immunity protects government officials 'from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The qualified immunity inquiry has two

---

[3] All references to Defendants in this section refer to Deputies Carter and Burleson, unless otherwise noted.

prongs: (1) whether an official's conduct violated a constitutional right of the plaintiff; and (2) whether that right was clearly established at the time of the violation. *See Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). The Court may begin its analysis by considering either prong. *See Pearson*, 555 U.S. at 236.

Whether a legal rule is clearly established depends substantially upon the level of generality at which the rule is identified. *See Anderson v. Creighton*, 483 U.S. 635, 639 (1987). The right a government official is alleged to have violated must have been "clearly established" in a particularized and relevant sense. *Id.* at 640. This means that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* In other words, in view of pre-existing law, the unlawfulness of an official action must be apparent. *Id.* (citations omitted).

Searches and seizures inside a home without a warrant are presumptively unreasonable. *See Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006). But this presumption may be overcome in some circumstances because "[t]he ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Id.* at 403. The exigencies of a particular situation may "make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable under the Fourth Amendment." *Mincey v. Arizona*, 437 U.S. 385, 394 (1978).

"[W]here the complained of conduct is a law enforcement warrantless search of a residence, qualified immunity turns not only on whether it was then clearly established that such a search required probable cause and exigent circumstances, but *also* on whether it was then 'clearly established that the circumstances with which' the officer 'was confronted did not constitute probable cause and exigent circumstances.'" *Pierce v. Smith*, 117 F.3d 866, 871 (5th Cir. 1997)

(quoting *Anderson v. Creighton*, 483 U.S. 635, 640-41 (1987).

To prevail on their claim under the Fourth Amendment, Plaintiffs must overcome Defendants' qualified immunity defense. The burden is on Plaintiffs to rebut the officers' qualified immunity defense "by establishing a genuine fact issue as to whether the [officers'] allegedly wrongful conduct violated clearly established law." *Brown*, 623 F.3d at 253.

The relevant question in this case is whether a reasonable officer could have believed Defendants' warrantless search to be lawful, in light of clearly established law and the information the searching officers possessed. *See Anderson*, 483 U.S. at 641. The Court is presented with the following facts: John Rose called in sick for work on February 3, 2010. At approximately 8:30 p.m. that night, Deputy Carter arrived at the Roses' home. He observed a car in the driveway but could not identify its owner. He observed lights and a television on in the home. The front door was open and the interior of the home appeared "ransacked," "destroyed," and as though someone had been rummaging around inside. Carter yelled into the house several times to announce his presence, but received no response. He called for back up. Deputy Burleson arrived about ten minutes later and the two deputies searched the home for less than five minutes.

Plaintiffs argue that Defendants are not entitled to qualified immunity under these facts. They rely on *United States v. Troop*, 514 F.3d 405 (5th Cir. 2008). In *Troop*, border patrol agents suspected that illegal aliens may have been inside a house. *Troop*, 514 F.3d at 408. The agents knocked and announced their presence at the house, but received no response. *Id.* Through a window, the agents could see two men lying on a bed. *Id.* The agents called to these men, but received no response. *Id.* One agent reached through an open window and shook one of the men, but still received no response. *Id.* Believing that there may have been a medical emergency, the agents

entered the home and found evidence of a crime, which was later used to convict Troop. *Id.* The Fifth Circuit held that these facts did not constitute exigent circumstances because there was "no evidence of medical distress requiring immediate aid, such as loss of blood, signs of physical illness, or evidence that an individual had to be carried or dragged." *Id.* at 410. The Court found that the failure of anyone to respond to the agents' knocking was insufficient to create exigent circumstances. *Id.*

Plaintiffs argue that *Troop* is directly relevant to this case. But *Troop* was a criminal case, and the question before the Fifth Circuit was whether certain incriminating evidence should be suppressed because it was obtained during a warrantless search. *Id.* at 407. *Troop* did not address whether the border patrol agents who conducted the search should be stripped of qualified immunity and subjected to civil liability for their actions. Moreover, the circumstances of the search in *Troop* are sufficiently distinct from the circumstances in the present case that they could not have put Deputies Carter and Burleson on notice that searching the Roses' home was a violation of constitutional law. Like the agents in *Troop*, Carter and Burleson received no response when they announced their presence at the home. In *Troop* and this case, the officers were able to see inside the homes before entering them. In *Troop*, the officers observed men sleeping on a bed, but they did not present evidence of distress that might have justified their warrantless entry. *Id.* at 410. In this case the door was open, interior lights and the TV were on, and the interior of the home appeared to be destroyed. In addition, there was a car in the driveway giving rise to a reasonable belief that someone was home. Finally, Deputies Carter and Burleson knew that Plaintiff Rose had been too sick to work that day. On these facts, Defendants argue that they had reason to believe that some sort of struggle, distress, or violence had recently occurred in the home. They also argue that Plaintiff

Rose's failure to respond to their calls, the disarray of the home, and the fact that Rose had called in sick for work created a real concern that he was seriously ill or endangered.

Based on the circumstances confronting Deputies Carter and Burleson, the Court cannot say that it was objectively unreasonable for them to enter the Roses' home. Plaintiffs have not shown that Defendants' conduct was objectively unreasonable in light of clearly established law at the time of the incident.

Moreover, even if Defendants were incorrect in concluding that exigent circumstances existed, they were not objectively unreasonable in believing that there were exigent circumstances. Consequently, they are entitled to qualified immunity. *See Anderson*, 483 U.S. at 641 (stating that law enforcement agents who reasonably but mistakenly conclude that exigent circumstances are present should not be held personally liable for their actions). Defendants had knowledge of several facts giving rise to a legitimate concern for the safety of Plaintiff Rose. There was no clearly established law that placed Defendants on notice that their actions were unlawful under the circumstances.

As a result, Defendants are entitled to qualified immunity and Defendants' motion for summary judgment (Doc. No. 32) is GRANTED.

**It is SO ORDERED.**

**SIGNED this 8th day of June, 2012.**

MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE